## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| LASHANN SIMPSON, SIVONEED ROMERO-SOTO, and TOMMY GURROLA on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>IRB HOLDING CORP. d/b/a INSPIRE BRANDS, INC. and JOHN/JANE DOE 1–10,<br><br>Defendants. | **Civil Action No.:**<br><br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs Lashann Simpson, Sivoneed Romero-Soto, and Tommy Gurrola, individually and on behalf of the Class defined below of similarly situated persons, allege the following against IRB Holdings Corp. d/b/a Inspire Brands, Inc. ("Inspire Brands") and the Vice Presidents, Benefits of Inspire whose identities are not known at this time (collectively, "Defendants") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

## NATURE OF THE ACTION

1.    It is both unfair and unlawful for companies like Inspire Brands to impose discriminatory and punitive health insurance surcharges on employees who use nicotine products. This lawsuit challenges Defendants' unlawful practice of charging a "nicotine surcharge" without complying with the regulatory requirements under the Employee Retirement Income Security Act of 1974 ("ERISA") and the implementing regulations. Under ERISA, wellness programs must offer, and provide notice of, a reasonable alternative standard that allows all participants to obtain the "***full reward***"—including refunds for surcharges paid while completing the program. 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(j)(3)(D). Plans must also provide notice. Instead, under the Inspire Brands Health & Welfare Plan (the "Plan"), Defendants operate a non-compliant, discriminatory tobacco wellness program that does not offer the "full reward" to participants who satisfy the alternative standard and does not provide proper notice in all plan materials, violating federal regulations and depriving participants of benefits required under ERISA.

2.    Nicotine premiums have become more prevalent in recent years but to be lawful plans can only impose these surcharges in connection with *compliant* "wellness programs," meaning they must adhere to strict rules set forth by ERISA and implementing regulations established by the Departments of Labor, Health and

Human Services, and the Treasury (collectively, the "Departments") over ten years ago in 2014. ERISA imbues the Departments with the authority to promulgate regulations interpreting ERISA § 702, 29 U.S.C. § 1182, the statute's non-discrimination provision. Accordingly, the Departments have issued clear regulatory criteria that plans must satisfy to qualify for the statutory exception or safe-harbor, which they may invoke only if they can affirmatively demonstrate full compliance with these strict requirements in response to claims that their program is discriminatory. Moreover, courts must defer to the agency's interpretation of its own regulations, as long as that interpretation is neither plainly erroneous nor inconsistent with the regulatory framework, ensuring that plans cannot evade ERISA's anti-discrimination protections by selectively or improperly applying these rules.

3.    The strict regulatory requirements are meant to ensure that wellness programs actually promote health and preclude discrimination, instead of wellness programs that are "subterfuge[s] for discriminating based on a health factor." The regulations make clear that for plans to be reasonable they must offer a "reasonable alternative standard" that provides the "full reward" to all participants who do not satisfy the initial standard. In other words, a wellness program must actually be designed to improve health or prevent disease and not be just an excuse to charge certain participants more money or make it difficult for them to get coverage. Providing participants with the "full reward" means making sure that every

participant who completes the alternative standard gets the same reward as provided to non-smokers (i.e., avoiding the surcharge for the entire year).

4.    The need for regulatory safeguards surrounding these types of wellness programs is underscored by studies showing little evidence that wellness programs effectively reduce healthcare costs through health improvement. Instead, the savings employers claim often result in cost-shifting onto employees with higher health risks, disproportionately burdening low-income and vulnerable workers who end up subsidizing their healthier colleagues.[1] The regulatory safeguards seek to prevent wellness programs from being misused as thinly veiled revenue-generating schemes at the expense of employees who are least able to afford the additional costs by shifting the burden to plan sponsors to demonstrate compliance once a participant alleges discriminatory surcharges. The goal is to ensure that wellness programs operate equitably and in a non-discriminatory manner, and to promote genuine health improvements.

---

[1] Horwitz, J. R., Kelly, B. D., & DiNardo, J. E. (2013). *Wellness incentives in the workplace: Cost savings through cost shifting to unhealthy workers*. Health Affairs, 32(3), 468–476, 474 ("wellness programs may undermine laws meant to prevent discrimination on the basis of health status. Since racial minorities and people with low socioeconomic status are more likely than others to have more health risks, they are also more likely to be adversely affected by cost shifting"); *see also* Dorilas, E., Hill, S. C., & Pesko, M. F. (2022). *Tobacco surcharges associated with reduced ACA marketplace enrollment*. Health Affairs, 41(3), Abstract (finding that nicotine premiums are significant barriers to affordable health insurance).

5.     Outcome-based programs,[2] such as smoking cessation programs, must offer a "*reasonable* alternative standard," which is an alternative way for "all similarly situated individuals" to obtain the reward (or avoid a penalty) if they are unable to meet the initial wellness program standard (i.e., being tobacco-free). Critically, ERISA's implementing regulations require that "the *same*, *full reward*" must be provided to individuals who complete the alternative standard, regardless of when they do so during the plan year.[3] The Department of Labor ("DOL") has made clear that participants should not be forced to rush through the program under the threat of continued surcharges. The Departments made this requirement clear when they stated it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual participating in the program*** should be able to

---

[2] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

[3] *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "**Final Regulations**") ("while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual*** as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.)" (emphasis added)).

receive **the full amount of any reward or incentive**...." *Id.*, 33160 (emphasis added).

Defendants' failure to provide full reimbursement is a *direct violation* of these rules.

Employers must also clearly communicate the availability of this alternative

standard in all plan materials referencing tobacco-related premium differentials,

including plan documents and summary plan descriptions ("SPDs"). *Id.*

6.      Defendants cannot qualify for the statutory safe harbor because the Plan

fails to satisfy the essential regulatory criteria, which "must be satisfied," (*id.*,

33160) for a wellness program to be lawful under ERISA. The core deficiency of

Defendants' wellness program is that it does not provide the "full reward" to all

participants who satisfy the alternative standard, as explicitly required by 42 U.S.C.

§ 300gg-4(j)(3)(D) and 29 C.F.R. § 2590.702(f)(4)(iv). Further, the Plan fails to

provide the necessary notices to participants informing them of a *compliant*

alternative standard or that the recommendations of their personal physicians will be

accommodated. The Plan makes clear that if participants complete the alternative

standard, the surcharge will stop on a *prospective* basis but "[n]icotine Premiums

deducted through payroll prior to completing the nicotine screening **will not be**

**refunded**." By refusing to provide retroactive reimbursement, Defendants deny

participants the opportunity to achieve the "full reward," as required by law. This

failure prevents "all similarly situated individuals" from obtaining the "full reward,"

rendering the wellness program discriminatory and noncompliant with regulatory

standards. Moreover, the Plan fails to meet the notice requirements necessary for a lawful wellness program. Materials describing the nicotine premium do not include sufficient disclosures about working with personal physicians to develop an individualized alternative standard. These omissions deprive participants of critical information needed to fully understand and exercise their rights under the wellness program. Because the wellness program does not meet the necessary criteria, Defendants cannot assert an affirmative defense that their wellness program is non-discriminatory, meaning the nicotine premium is unlawful and discriminatory in violation of ERISA.

7.     Plaintiffs are current and former employees of Buffalo Wild Wings ("BWW"), a subsidiary of Inspire Brands, who paid, and continue to pay, the unlawful nicotine premiums to maintain health insurance coverage under the Plan. This surcharge imposed, and continues to impose, an additional financial burden on Plaintiffs and those similarly situated.

8.     Plaintiffs bring this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover these unlawfully charged fees and for plan-wide equitable relief to prevent Inspire Brands from continuing to profit from its violations under 29 U.S.C. § 1109. Under 29 U.S.C. § 1109, Defendants are fiduciaries of the Plan who have a legal obligation to act in the best interests of Plan participants and to comply with federal law. Plaintiffs, on

behalf of themselves and the Plan as a whole, seek appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Defendants' ongoing violations of ERISA's anti-discrimination provisions.

## **PARTIES**

9.      Plaintiff Lashann Simpson is, and at all times mentioned herein was, an individual citizen of the Commonwealth of Pennsylvania residing in the County of Montgomery. Mr. Simpson was and is an employee of BWW, a subsidiary of Inspire Brands, who participated in the Plan and paid the nicotine premium associated with the health insurance offered through his employer during his employment.

10.      Plaintiff Sivoneed Romero-Soto is, and at all times mentioned herein was, an individual citizen of the State of Illinois residing in the County of Cook. Ms. Romero-Soto is, and at all relevant times, was an employee of BWW, a subsidiary of Inspire Brands, who participated  in the Plan and paid the nicotine premium associated with the health insurance offered through her employer during her employment.

11.      Plaintiff Tommy Gurrola, is, and at all times mentioned herein was, an individual citizen of the State of Florida residing in the County of Clay. Mr. Gurrola was an employee of Blazin Wings, Inc., a subsidiary of BWW and Inspire Brands, until June 2024 who paid the nicotine premium associated with the health insurance offered through his employer during his employment.

8

12.    Plaintiffs are participants in the Plan pursuant to 29 U.S.C. § 1002(7).

13.    Defendant Inspire Brands is a leading global multi-brand restaurant company headquartered in Sandy Springs, Georgia. As of February 2025, Inspire Brands employs approximately 675,000 company and franchise team members globally and operates over 32,600 restaurants across nearly 60 global markets.

14.    At all times relevant to this lawsuit, Defendants operated one or more health and welfare plans which were available for Inspire Brands employees. Recently filed public documents show the Plan has over 19,000 active participants as of December 31, 2023. The Plan is an employee benefit plan subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1003(a).

## JURISDICTION AND VENUE

15.    The Court has subject matter jurisdiction pursuant to 29 U.S.C. §1132(e)(1) and §28 U.S.C. 1331, as this suit seeks relief under ERISA, a federal statute. It also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 1,000, many of whom have different citizenship from Defendants. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

16.    This Court has personal jurisdiction over Defendants because Inspire Brands is headquartered in Georgia and the claims of Plaintiffs and all others

similarly situated arise from the acts and omissions of Defendants with respect to its activities and conduct concerning Plaintiffs within the State of Georgia, and Defendants have purposefully availed themselves of the privilege of conducting business within the State of Georgia.

17. Venue is proper in this District under 2 U.S.C. 1132§ (e)(2) because Defendant Inspire Brands is headquartered in this District and this is a District in which Defendants may be found.

## FACTUAL BACKGROUND

### I. DEFENDANTS' NICOTINE PREMIUM VIOLATE ERISA'S ANTI-DISCRIMINATION RULE

#### A. Statutory and Regulatory Requirements

18. To expand access to affordable health insurance coverage, the Affordable Care Act ("ACA") amended ERISA to prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual

enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1).

19.    The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to ***programs of health promotion and disease prevention***" (29 U.S.C. § 1182(b)(2)(B)(emphasis added)); however, these "wellness programs"—to qualify for this statutory safe-harbor exception—must strictly adhere to the mandated regulatory requirements.

20.    Under ERISA § 505, 29 U.S.C. § 1135, Congress granted the Department of Labor the authority to issue regulations, including the power to establish regulations prohibiting discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182. This authority empowers the Secretary of Labor (the "Secretary") to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of" Title I of ERISA. (29 U.S.C. § 1135). Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly reinforces the Secretary's authority to issue regulations concerning group health plan requirements, which grants the power to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

21.    Exercising this delegated authority, in 2006, the Secretary issued regulations through the notice-and-comment rulemaking process outlining the

criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). *See* Final Regulations, 33158–59. Following the amendments by the Affordable Care and Public Health Service Acts in 2010, the Departments, published proposed regulations in November 2012 to "amend the 2006 regulations regarding nondiscriminatory wellness programs." *Id.*, 33159. These regulations (i.e., the Final Regulations) were approved and signed in 2013 to be effective January 1, 2014. *Id.*, 33158.

22.    The Final Regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives (i.e., smoking cessation programs), must meet detailed requirements to qualify for the safe harbor. As the Departments explained, these criteria "***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33163. "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). Plans that fail to follow even a single criteria of the regulatory framework cannot claim that their surcharges are permissible under ERISA. Thus, the burden is on Defendants—not Plaintiffs—to demonstrate compliance once an allegation of discrimination has been made, and failure to meet any one of these criteria renders a wellness program noncompliant and discriminatory.

23.    The regulations are not optional because they serve as the only lawful

pathway for plans to impose health-based premium differentials without violating

ERISA's anti-discrimination provisions by ensuring that wellness programs do not

arbitrarily penalize participants and preventing employers from using surcharges as

a revenue-generating mechanism rather than a genuine tool for health promotion. If

a program fails to meet even one of these stringent requirements the program cannot

benefit from the statutory carve-out and remains in violation of the statute's anti-

discrimination provisions. See § 2590.702(f)(4) (describing the "[r]equirements for

outcome-based wellness programs," stating that a program "does not violate the

provisions of this section only if all of the [] requirements are satisfied.").4

### B. Regulatory Criteria

24.    To comply with ERISA and avoid unlawful discriminatory surcharges,

outcome-based wellness programs must meet the following five (5) criteria:

---

[4] Congress adopted these regulatory criteria when, through the Patient Protection
and Affordable Care Act, it amended the Public Health Service Act, incorporating
these criteria into ERISA. *See* 42 U.S.C. § 300gg-4(j)(3); 29 U.S.C. § 1185d(a)(1)
("[T]he provisions of part A of title XXVII of the Public Health Service Act [42
U.S.C. § 300gg *et seq*.] (as amended by the Patient Protection and Affordable Care
Act) shall apply to group health plans, and health insurance issuers providing health
insurance coverage in connection with group health plans, as if included in this
subpart[.]").

(a) Frequency of opportunity to qualify: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b) Size of reward: penalties or rewards cannot exceed 50% of the cost of employee-only coverage. § 2590.702(f)(4)(ii)

(c) Reasonable design: programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard based on a measurement, test, or screening...." § 2590.702(f)(4)(iii)).

(d) Uniform availability and reasonable alternative standards: The ***full reward*** under the outcome-based wellness program must be available to ***all similarly situated individuals***." 29 C.F.R. § 2590.702(f)(4)(iv).

(e) Notice of availability of reasonable alternative standard: notice must include (a) instructions on how to access the reasonable alternative standard; (b) contact information for inquiries about the alternative

standard; and (c) an explicit statement that participants' personal physician's recommendations will be accommodated. *See* § 2590.702(f)(4)(v).

25.    The Departments provided valuable insight into each of the criteria, reflecting their intent to operationalize the statute's protections in a manner that both promotes health and prevents discriminatory practices under ERISA.

26.    Regarding the first criteria, "the once-per-year requirement was included as a bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease." Final Regulations, 33162. The once-per-year requirement ensures that participants have a meaningful opportunity to participate in a reasonable alternative standard.

27.    A key requirement of the fourth criterion for outcome-based programs is that the "full reward" must be available to "all similarly situated individuals[,]" regardless of when they meet the reasonable alternative standard during the plan year. *See* Final Regulations, 33165. Critically, the Departments clearly state that it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual*** participating in the program should be able to receive the ***full amount of any reward or incentive***...." *Id.* (emphases added). While plans have flexibility in determining the manner in which they provide the "full reward,"

providing the "full reward" to every participant is ***mandatory***, regardless of when the participant satisfies the alternative standard. The Departments have made this clear:

> While an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year***. (For example, if a calendar year plan offers a . . . premium discount and an individual . . . satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.) Plans and issuers have flexibility to determine ***how*** to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) ***as long as . . . the individual receives the full amount of the reward***.

Final Regulations, 33163 (emphases added).

28.    Some mistakenly conflate criteria (1) and (4), but they impose two distinct requirements: (1) the frequency of opportunity and (2) the full reward requirement. As discussed, the first ensures participants have at least one chance per plan year to satisfy a reasonable alternative standard. The second mandates that all who meet the alternative standard receive the same full reward as those who satisfied the initial standard at the outset (i.e., non-smokers). *See id.*, 33163. Merely offering an opportunity to avoid the surcharge does not satisfy the "full reward" requirement. If a plan offers the alternative standard throughout the plan year, it must have a mechanism ensuring all participants who complete it receive the same benefit,

16

regardless of when they complete the program. A plan that allows participants to complete the alternative standard throughout the plan year but withholds full reimbursement violates the full reward and the notice requirements, rendering the program noncompliant with ERISA's anti-discrimination protections.

29.    The "full reward" requirement makes clear that if a plan offers a reasonable alternative standard throughout the plan year, it must ensure that ***every participant*** who satisfies the alternative standard ***receives the same full reward*** as those who met the initial standard at the outset. A plan cannot permit participants to complete the alternative standard later in the plan year and then deny them the reward that was provided to participants who satisfied the same standard earlier in the year. Plans that impose arbitrary cutoff dates and withhold retroactive reimbursement violate ERISA's anti-discrimination protections by penalizing participants for the timing of their compliance rather than ensuring equal access to the full reward. The DOL has repeatedly made clear that it interprets the phrase "full reward" to mean the same reward (or lack of penalty) as non-smokers received. In other words, avoiding the surcharge for the entire plan year.[5] Under *Auer v. Robbins,*

---

[5] *See Sec'y of Labor v. Macy's, Inc.*, No. 17-cv-541, ECF 41, PAGEID: 360 (asserting, in 2018, that "in order for the reward to be available to all similarly situated individuals, the plain language of the regulations required reimbursement of the Tobacco Surcharge ***for the entire Plan year*** to Plan participants who completed a tobacco cessation program" (emphasis added)); *id.*, ECF 87, PAGEID: 1224

519 U.S. 452 (1997) and *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), courts **must** defer to agency interpretations of their own regulations unless "plainly erroneous or inconsistent with the regulation." *Auer*, 519 U.S. at 461.

30.    The DOL recently articulated how plans must have a mechanism to ensure full reimbursement for surcharges already paid because this "interpretation [of the regulatory requirement] is not only reasonable under the regulation, it is entirely consistent with ERISA." Macy's, No. 1:17-cv-541, ECF No. 87, PAGEID: 1224. Permitting plans to penalize participants for taking longer to complete the alternative standard would, as the DOL recognized, "in fact allow for plans to discriminate for a portion of the plan year." *Id.*

31.    Defendants' Plan fails to provide participants with the full reward. By denying retroactive reimbursement to anyone who satisfies the alternative standard, and failing to provide the required notice, Defendants fail to comply with two cornerstones of the regulatory framework in violation of ERISA § 702's prohibition against discrimination based on a health status factor.

---

(asserting, in 2025, that for a plan to satisfy the "full reward" requirement, and ensure "that reward [] be 'available to all similarly situated individuals,' it would [] need to be provided to anyone who completed the tobacco cessation program **during that year**" (emphasis added); *id*., 2021 U.S. Dist. LEXIS 221603, at *50 (S.D. Ohio Nov. 17, 2021) ("That is, all seem to agree that . . . the [Final R]egulation[s] would require a r**efund of the entire annual amount for anyone who completes the reasonable alternative standard at any point during the year**") (emphasis added).

32.    Allowing companies like Inspire Brands to exploit their participants and unlawfully extract millions from them under the guise of a wellness program that is, in reality, a cash grab, directly contradicts ERISA's purpose of protecting workers from health-based discrimination. If unchecked, this practice would permit employers like Inspire Brands to manipulate wellness programs as revenue-generating schemes rather than genuine health initiatives, shifting unjust financial burdens onto employees in violation of federal law

## II.    DEFENDANTS CANNOT AVAIL THEMSELVES OF ERISA'S SAFE HARBOR

33.    Defendants' wellness program violates ERISA and its implementing regulations by failing to provide a "program[] of health promotion or disease prevention" that complies with the regulatory framework. Specifically, Defendants' program unlawfully discriminates against participants by denying full reimbursement to anyone who completes the wellness program. Instead of ensuring that "all similarly situated individuals" obtain the "full reward" as required by 29 C.F.R. § 2590.702(f)(4), Defendants' Plan penalizes participants who complete the program by withholding reimbursement to those participants. In doing so, Defendants turn a supposed wellness program into an unlawful cost-shifting scheme that exploits employees by denying participants the "full reward" required under 29

19

C.F.R. § 2590.702(f)(4)(iv) and by failing to provide notice under § 2590.702(f)(4)(v).

34.     Specifically, the program imposes a nicotine premium between $7.50 to $15 every week, for an annual amount of between $390 to $780. While participants may be eligible to have the nicotine premium removed after completing a 6-week smoking cessation program, the premium is removed on a *prospective* basis only, despite regulatory requirements that the "full reward" must be provided to "all similarly situated individuals."

35.     Defendants' wellness program clearly prevents any form of retroactive reimbursement through its Benefits Guide, which has a section discussing how participants can have the premium removed. Either participants can screen negative for nicotine use, and "[o]nce nicotine screening results have been verified and received by the Inspire Brands Benefits Department, the Nicotine Premium will be removed as quickly as administratively possible[,]" or participants can complete a 6-week smoking cessation program. Notably, "[p]remiums deducted . . . prior to completing the nicotine screening ***will not be refunded***." (Emphasis added.)

36.     The Benefits Guide states that "[i]f you are a nicotine user, upon successful completion of a 6-week smoking cessation program, you ***may*** be eligible to have the Nicotine Premium removed." (Emphasis added.) An Inspire Brands Benefits at a Glance information sheet states: "[t]he ***Nicotine Premium applies until***

*you* validate that you are a non-Nicotine user or ***complete a smoking cessation program***." This means that participants who quit using tobacco and screen negative for nicotine or who complete the cessation program are unable to avoid at least a partial surcharge. By failing to offer the full reward to participants who meet the initial tobacco-free status or the alternative standard, Defendants' wellness program violates ERISA's requirement to provide the "full reward" to "all similarly situated individuals."

37. Moreover, the Plan fails to provide participants with clear notice. Specifically, the Plan's failure to fully reimburse participants who become tobacco free or who complete the alternative standard means that the so-called "reasonable alternative" is, in reality, not actually available to all similarly situated individuals in the way that ERISA and the Final Regulations require. A notice that describes an alternative standard that does not provide the "full reward" is, by definition, misleading and incomplete. The Plan effectively provides notice of a ***partial*** alternative standard, which is insufficient under 29 C.F.R. § 2590.702(f)(4)(v) because it does not enable participants to obtain the same financial benefit as those who initially meet the non-smoking standard.

38. Further, the materials discussing the surcharge do not provide contact information for obtaining the alternative standard and none of Defendants' materials addressing the nicotine premium include a statement that a participant's physician's

recommendations will be accommodated, as required under 29 C.F.R. § 2590.702(f)(4)(v). These omissions not only fail to meet the regulatory requirements under ERISA but also undermine the purpose of wellness programs, which is to promote health outcomes in an inclusive and equitable manner. By failing to include this critical information in its materials, Defendants prevented participants, particularly those who may have unique medical conditions or disabilities, from knowing that they have the option to work with their healthcare provider to identify and recommend a reasonable alternative standard tailored to their individual needs. Additionally, while the Benefits at a Glance document mentions the nicotine premium and how it applies until participants validate there are nicotine free or complete the cessation program, there is no mention of how to access the smoking cessation program or the physician accommodation statement. The absence of these disclosures in Plan communications that discuss premium differentials is a standalone violation of the regulatory framework.[6] These omissions deprive participants of the information necessary to understand their rights, including their

---

[6] *See* § 2590.702(f)(4)(v) ("The plan or issuer **must disclose in <u>all</u> plan materials** describing the terms of an outcome-based wellness program, and **in any disclosure that an individual did not satisfy an initial outcome-based standard**, the availability of a reasonable alternative standard to qualify for the reward . . . including contact information for obtaining a reasonable alternative standard and **a statement that recommendations of an individual's personal physician will be accommodated**") (emphases added).

ability to qualify for a reasonable alternative standard and avoid the surcharge for the entire plan year. Defendants fail to provide this required notice in all communications to participants regarding the nicotine premium.

39.     The Plan does not provide participants with a means to challenge the legality of the nicotine premium, violating fundamental ERISA protections. Defendants have structured the Plan's administrative process to omit a mechanism by which participants can contest the surcharge on statutory grounds, leaving them without a clear path to assert their rights under ERISA.

40.     Communications with Inspire Brands' Manager of Benefits Administration, Jen Peterson, confirm this deficiency. In an email exchange from February 20–21, 2025, Ms. Peterson confirmed: "There is no claim form in relation to the Nicotine Premium . . . claims are submitted directly by the healthcare provider to the insurance company, and manual claim forms such as those provided are used for out-of-network charges or other one-offs. The plan administrator does not manage claims." *See* Exhibit A, a copy of the email correspondence with Ms. Peterson confirming that Defendant does not have an established means by which participants can contest the legality of the nicotine premium through internal Plan procedures, attached hereto. Without an avenue for participants to dispute the nicotine premium's legality, they are not required to exhaust administrative remedies prior to filing suit.

41.     Throughout 2024, and, upon information and belief, for years prior and after, Defendants charged these weekly nicotine premiums. Each year, Defendants administered a wellness program that resulted in tobacco users being regularly charged (between $7.50 and $15 weekly) that was deducted from their paychecks. Plaintiffs paid these premiums during this period and continue to pay them.

42.     Defendants' wellness program fundamentally fails to comply with ERISA's regulatory requirements because it does not provide the full reward to any participants who satisfy the initial standard later in the year or who complete the alternative standard and fails to provide notice of the same or in all the Plan materials discussing the nicotine premium. Under ERISA, a wellness program cannot claim safe harbor protection unless every criterion of the regulatory framework is satisfied. *See* 29 C.F.R. § 2590.702(f)(4).

## III.    DEFENDANTS' SELF-DEALING AND MISMANAGEMENT OF PLAN FUNDS

43.     Defendants control the administration of the nicotine premium wellness program, determining which participants are charged and withholding the surcharge amounts directly from participants' paychecks, evaluating and deciding whether participants satisfy the alternative standard, and when those participants will be reimbursed, if at all, and determining which information is transmitted to participants and when. The amounts Defendants deducted from participants'

paychecks are not placed in a trust account for the Plan but are instead deposited into Inspire Brands's general accounts. By retaining these surcharges rather than reimbursing participants who satisfy the alternative standard later in the year or contributing the funds to the Plan, Inspire Brands unlawfully profits from Defendants' own regulatory violations. Instead of complying with its legal obligations to provide a compliant wellness program, Defendants withhold surcharges that should be returned to participants and, in doing so, Inspire Brands earns interest on improperly retained funds while simultaneously reducing its own financial contributions to the Plan. This practice constitutes self-dealing and a breach of fiduciary duty under ERISA, which mandates that Plan assets be managed exclusively for the benefit of participants and beneficiaries—not to enhance the company's bottom line.

44.    Defendants have fiduciary obligations to ensure that Plan funds— including any surcharges collected—are used solely to support participant health coverage and wellness benefits. Instead, Defendants' failure to reimburse surcharges to participants who satisfy the alternative standard later in the year reveals the true purpose of the program: revenue generation rather than health promotion. By charging participants premiums for nicotine use without a mechanism for full reimbursement, Defendants transform their so-called wellness program into a profit-driven penalty scheme that systematically shifts costs onto participants in violation

of ERISA's fiduciary duty standards. In sum, Defendants' program is not a legitimate wellness initiative, but an unlawful financial scheme designed to extract additional funds from employees while failing to meet ERISA's legal requirements.

## CLASS DEFINITION AND ALLEGATIONS

45.    Plaintiffs bring this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b)(1), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

46.    Plaintiffs propose the following Class definition, subject to amendment as appropriate:

> **Nicotine premium Class**
> All individuals residing in the U.S. who, from 2014 to the time of judgment, paid a nicotine premium in connection with their participation in a health or welfare plan offered by Defendants.

47.    Excluded from the Class are Inspire Brands's officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

48.    Plaintiffs reserve the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

49.    The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3).

50. **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiffs are informed, believe, and thereon allege, that the proposed Class contains thousands of participants who have been damaged by Defendants' conduct as alleged herein, the identity of whom is within the knowledge of Defendants and can be easily determined through Defendants' records.

51. **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

a. Whether Defendants' nicotine premium discriminates against participants based on a health status related factor;

b. Whether the smoking cessation program constitutes a reasonable alternative standard by which a participant could receive the "full reward" of the nicotine premium;

c. Whether Defendants notified participants in all the Plan materials describing the surcharge of the avenues by which participants could avoid the nicotine premium and obtain the "full reward";

d. Whether Defendants' wellness program violates ERISA and the applicable regulations;

e. Whether Defendants properly notified participants of the availability of reasonable alternative standard to avoid the nicotine premium;

f. Whether Defendants provided the required statement that participants' personal physicians' recommendations would be accommodated;

g. Whether Defendants breached their fiduciary duties by collecting and retaining the nicotine premium instead of contributing those monies to the Plan and its participants;

    h. Whether Defendants breached their fiduciary duties by failing to periodically review the terms of its wellness program to ensure compliance with ERISA and applicable regulations;

    i. Whether Inspire Brands breached its fiduciary duty to monitor the activities of the Plan's fiduciaries to ensure compliance with ERISA; and

    j. The appropriate mechanisms to determine damages on a class-wide basis.

52.   **<u>Typicality</u>**. Plaintiffs' claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were charged improper and unlawful nicotine premium. Moreover, Plaintiffs' claims are typical of the Class members' claims because Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

53.   **<u>Adequacy of Representation</u>**. Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs and members of the Class each participated in health and welfare plans offered by Defendants and were harmed by Defendants' misconduct in that they were assessed unfair and discriminatory nicotine premiums. Plaintiffs will fairly and adequately represent and protect the interests of the Class and has retained competent counsel experienced in complex

litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiffs.

54.     **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

55.     Plaintiffs seek injunctive, declaratory, and equitable relief on grounds generally applicable to the Class. Unless the Class is certified, Defendants will be allowed to profit from their unfair and discriminatory practices, while Plaintiffs and the members of the Class will have suffered damages. Unless Class-wide injunctions

are issued, Defendants may continue to benefit from the violations alleged, and the members of the Class will continue to be unfairly treated.

## CAUSES OF ACTION

### COUNT I
### UNLAWFUL IMPOSITION OF A DISCRIMINATORY NICOTINE PREMIUM
### (Violation of 29 U.S.C. § 1182)

56.    Plaintiffs re-allege and incorporate herein by reference the prior allegations in paragraphs 1–55 of this Complaint.

57.    Defendants unlawfully impose a nicotine premium on all participants who use nicotine in violation of ERISA § 702. By imposing discriminatory premiums of between $7.50 and $15.00 each week on participants, and by charging some participants more than others based on a health status-related factor, Defendants are violating ERISA § 702(b), 29 U.S.C. § 1182(b)(1) and 42 U.S.C. § 300gg-4. This discrimination stems from Defendants' decision to deny the full reward to participants who satisfy the initial standard or the alternative standard during the plan year, in violation of ERISA and the Final Regulations.

58.    ERISA explicitly prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor." *See* 29 U.S.C. § 1182(b). Defendants' Plan violates this

prohibition by withholding the full reward from participants who complete the become tobacco free during the year or who complete the smoking cessation program during the year, forcing them to pay surcharges despite satisfying the wellness programs requirements. By failing to provide the full reward—meaning the same benefit that is provided to non-nicotine users—Defendants operate a discriminatory wellness program that violates ERISA and fails to qualify for the safe-harbor exception.

59.    Defendants' imposition of the nicotine premium violates ERISA § 702 and the Final Regulations, including but not limited to 45 C.F.R. § 146.121(f)(4) and 29 C.F.R. § 2590.702(f)(4). Defendants' wellness program is non-compliant because it does not provide the "full reward" to "all similarly situated individuals" and because it does not provide proper notice to participants. Instead, participants who satisfy the initial standard or the alternative standard during the year may, if at all, be entitled to *prospective* relief only, unlawfully denying them the full financial benefit to which they are owed. To comply with ERISA's "full reward" requirement, the Plan must have a mechanism to ensure that every participant who completes the alternative standard, regardless of when during the plan year, avoids the surcharge for the entire year, as if they were a non-smoker.

60.    Additionally, Defendants fail to provide adequate notice to participants regarding critical aspects of the wellness program, further rendering it noncompliant

with ERISA § 702 and its implementing regulations. First, Defendants' materials fail to adequately inform participants that they can receive the "full reward" retroactively for the entire plan year upon completing the alternative standard, regardless of the timing, violating ERISA's requirement that "all similarly situated individuals" be clearly informed of their ability to achieve the full reward. Second, none of Defendants' materials addressing the nicotine premium provide contact information on how to obtain the alternative standard. Third, none of Defendants' materials addressing the nicotine premium include a statement that a participant's physician's recommendations will be accommodated, as explicitly required under ERISA regulations. *See* 29 C.F.R. § 2590.702(f)(4)(v). These cumulative failures undermine the purpose of ERISA's wellness program regulations, which are intended to ensure that wellness programs are accessible, equitable, and non-discriminatory.

61.     On March 7, 2025, Defendants were served with a formal claim for each Plaintiff by way of letter pursuant to the Plan's administrative procedures stating Plaintiffs' claims and requesting pursuant to ERISA §§ 104(b)(4) and 502(c)(1)(B), 29 U.S.C. §§ 1024(b)(4) and 1132(c)(1)(B) copies of all documents by which the Plan is or has been operated that supports the decision to impose the tobacco surcharges and additional premium amounts on Plaintiffs and those similarly situated. Additionally, Plaintiffs requested any communications or notices

regarding the availability of a reasonable alternative standard, any internal policies, procedures, or actuarial analyses justifying the surcharge.

62.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29 U.S.C. § 1182(b). Because Defendants' wellness program does not satisfy several of the criteria that plans must comply with to qualify as a compliant "program[] of health promotion and disease prevention," Defendants cannot qualify for the statutory safe-harbor and the nicotine premium is, therefore, unlawful and discriminatory. Plaintiffs and Class Members are entitled to relief under ERISA § 502(a)(3).

63.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available and appropriate remedies to redress Defendants' violations of ERISA's anti-discrimination provisions outlined in § 1182(b) and § 300gg-4, including but not limited to injunctive relief, restitution, and any other relief necessary to remedy Defendants' unlawful conduct, as set forth in the Prayer for Relief.

**COUNT II**
**BREACH OF FIDUCIARY DUTY**
**(Violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106)**

64.    Plaintiffs re-allege and incorporate herein by reference the prior allegations in paragraphs 1–63 of this Complaint.

65.    ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

66.    Instead of loyally and prudently acting in the best interests of Plan participants, Defendants chose to use Plan assets to exclusively benefit Inspire Brands, to the detriment of the Plan and its participants, by unlawfully withholding millions of dollars in nicotine premiums from participants' paychecks and using these funds to offset its own obligations to contribute to the Plan.

67.    Each year, Defendants administered the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of 29 U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control respecting the management of the Plan and its wellness programs, including the decision to administer a wellness program in a manner that violated ERISA and the regulations,

as discussed herein. Each year, Defendants exercised discretionary authority with respect to the administration and implementation of the unlawful wellness program by administering a wellness program without providing reasonable alternatives that allowed "all similarly situated individuals" to avoid the surcharge for the entire plan year, dictated the eligibility criteria and penalties for noncompliance, failed to review the terms of the wellness program, and failed to provide participants with the necessary notices.

68.    Defendants controlled and disseminated the contents of the SPD and the various Benefits Guides, informative documents, and emails sent to participants describing the nicotine premium, all of which failed to notify participants of a reasonable alternative standard by which they could avoid the entire year of surcharges regardless of when they satisfied the initial or alternative standard, failed to provide contact information for obtaining the alternative standard, and failed to mention that participants' physicians' recommendations would be accommodated, in violation of the regulations. Further, Defendants failed to adequately and regularly review the terms of its tobacco wellness program and the accompanying communications to participants to ensure they complied with ERISA and the regulations. Year after year, Defendants failed to properly institute safeguards against administering a program that violated the statute and implementing regulations. These actions reflect Inspire Brands' active role in administering a non-

compliant "program[] of health promotion and disease prevention," resulting in an unlawful and discriminatory nicotine premium in violation of ERISA.

69.    Defendants also breached their fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. Defendants acted disloyally by causing Plaintiffs and members of the Class to pay nicotine premiums that were unlawful because they were associated with a non-compliant wellness program.

70.    ERISA also imposes on fiduciaries that appoint other fiduciaries the duty to monitor the actions of those appointed fiduciaries to ensure compliance with ERISA. In allowing the Plan's named fiduciaries to impose an unlawful tobacco surcharge in connection with a non-compliant wellness program in violation of ERISA, Inspire Brands breached its fiduciary duties to supervise and monitor the Plan's named fiduciaries. Inspire Brands also failed to monitor the frequency with which the Plan's named fiduciaries reviewed the terms of the wellness program to ensure compliance with ERISA.

71.    As a result of the imposition of the unlawful and discriminatory nicotine premiums, Defendants enriched Inspire Brands at the expense of the Plan, resulting in it receiving a windfall. Defendants breached their fiduciary duties by prioritizing Inspire Brands' own financial interests over the interests of Plan participants by deducting from participants' paychecks the amounts of the premiums without

properly administering reimbursements to individuals who completed the wellness program. By administering the wellness program in a manner that precluded "all similarly situated individuals" from obtaining the "full reward," and by failing to adequately disclose participants' rights under tobacco wellness program, Defendants administered a program that disproportionately benefited itself at the expense of Plan participants. This practice resulted in an unjust enrichment to Inspire Brands at the expense of Plan participants, demonstrating a failure to act solely in the interests of participants and beneficiaries, in violation of ERISA's duty of loyalty under 29 U.S.C. § 1104(a)(1)(A).

72.    Further, by withholding unlawful nicotine premiums from participants' paychecks and using those funds to reduce its own financial obligations to the Plan, Inspire Brands caused the Plan to engage in transactions that constituted a direct or indirect exchange of Plan assets for the benefit of a party in interest—namely, itself—and improperly used Plan assets for its own financial advantage, in violation of 29 U.S.C. § 1106(a)(1). Inspire Brands is a party in interest, as that term is defined under 29 U.S.C. § 1002(14), because it is both a Plan fiduciary and the employer of Plan participants.

73.    By retaining the amounts of the nicotine premiums, Defendants increased Inspire Brands' own monies and saved the money it would have had to contribute to the Plan. In doing so, Defendants dealt with Plan assets for Inspire

Brands' own benefit, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), which prohibits fiduciaries from engaging in self-dealing and using plan assets for their own benefit. By retaining the surcharges without providing participants with the "full reward" to which they are entitled, Defendants improperly benefitted from their own wellness programs at the expense of Plan participants.

74.    Defendants breached their fiduciary duties by: failing to properly disclose material information about the wellness programs to participants, thereby misleading or depriving them of the ability to make informed decision; administering a wellness program that does not conform with ERISA's anti-discrimination provisions, in violation of ERISA § 404, 29 U.S.C. § 1104(a)(1)(D); acting on behalf of a party whose interests were averse to the interests of the Plan and the interests of its participants (and their beneficiaries), in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(2); and by failing to act prudently and diligently to review the terms of the wellness programs (and the Plan) and communications to ensure they properly complied with the regulatory requirements in violation of 29 U.S.C. § 1104(a)(1)(B). These breaches caused Plaintiffs and the Class to incur unlawful and discriminatory surcharges. Had Defendants conformed with their fiduciary duties under ERISA, they would not have administered a non-compliant wellness program and/or would have reviewed the terms of the Plan and the wellness program regularly to ensure they complied with ERISA and the implementing

regulations and would have updated those programs and communications to comply with the law.

75.    As a direct and proximate result of these fiduciary breaches, members of the Class lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks.

76.    Plaintiffs are authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Pursuant to 29 U.S.C. § 1109, Defendants are liable to: make good to the Plan all losses resulting from its breaches, including but not limited to any and all equitable and remedial relief as is proper, disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan or a constructive trust all profits acquired through its violations, as alleged herein.

### COUNT III
### VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT ("FBPA")
### (Violation of O.C.G.A. §§ 10-1-390 *et seq.*)

77.    Plaintiffs re-allege and incorporate by reference the prior allegations in paragraphs 1–76 of this Complaint.

78.    Defendants' administration of the nicotine surcharge constitutes an unfair and deceptive trade practice in violation of the FBPA, O.C.G.A. §§ 10-1-390 *et seq*.

79.    Under the FBPA, "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful." O.C.G.A. § 10-1-393(a).

80.    The purchase of health insurance through an employer constitutes a consumer transaction, and Defendants engaged in unfair and deceptive business practices by misrepresenting the nature of the nicotine premium. Defendants falsely represented that the premium was imposed as part of a lawful wellness program when, in fact, it does not comply with federal regulations under ERISA. Defendants also failed to disclose that participants who complete the smoking cessation program or test negative will not receive a full refund of the surcharge, misleading participants into believing they could avoid financial penalties.

81.    Additionally, Defendants omit material information regarding the notice of participants to have the recommendations of their physician accommodated for, as required by the Final Regulations, further misleading employees about their legal rights under the Plan and the wellness program.

82.    These deceptive and unfair practices affect the public interest because they are part of standardized employment benefits policies that apply to dozens if not hundreds of Georgia employees. Defendants' conduct represents a systemic and deceptive business practice affecting a broad class of employees in Georgia.

83.     As a direct and proximate result of Defendants' deceptive and unfair business practices, Plaintiffs and Class Members suffered damages, including unlawful surcharges deducted from their wages, financial harm, and out-of-pocket costs.

84.     Pursuant to O.C.G.A. § 10-1-399, Plaintiffs and the Class seek relief, including but not limited to actual damages sustained as a result of Defendants' unlawful practices; treble damages for Defendants' intentional violations of the FBPA; injunctive relief preventing Defendants from continuing to impose the deceptive nicotine premium; attorneys' fees and litigation costs under O.C.G.A. § 10-1-399(d), and any other relief the Court determines is just and proper.

## COUNT IV
## VIOLATION OF THE GEORGIA DECEPTIVE TRADE PRACTICES ACT ("GDTPA")
### (Violation of O.C.G.A. § 10-1-370 *et seq.*)

85.     Plaintiffs re-allege and incorporate by reference the prior allegations in paragraphs 1–84 of this Complaint.

86.     Defendants' administration of the nicotine premium program constitutes an unfair and deceptive business practice in violation of the GDTPA, O.C.G.A. § 10-1-370 *et seq*.

87.     The GDTPA prohibits unfair or deceptive acts or practices in the conduct of trade or commerce, including "represent[ing] that goods or services

41

have . . . characteristics, [], uses, benefits, or qualities that they do not have" and "engag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." O.C.G.A. § 10-1-372(a).

88.    Defendants misrepresent the nature of the nicotine premium, falsely presenting it as a lawful wellness program while failing to comply with federal regulations under ERISA. Defendants' materials do not disclose that participants who complete the smoking cessation program or test negative for nicotine after enrollment will receive a full refund of the surcharge. Instead, Defendants' materials misleadingly suggest that participation in the program allows participants to avoid the surcharge without clearly disclosing that prior deductions are never reimbursed

89.    Additionally, Defendants omit material information regarding the notice of participants to have the recommendations of their physician accommodated for, as required by the Final Regulations, further misleading employees about their legal rights under the Plan and the wellness program.

90.    These deceptive and unfair practices have resulted in substantial financial harm to Plaintiffs and the Class, who were misled into believing that the nicotine premium was imposed in accordance with applicable legal standards when, in reality, it violates ERISA and consumer protection laws.

91.    As a direct and proximate result of Defendants' deceptive and unfair practices, Plaintiffs and members of the Class have suffered damages in the form of

improper surcharges deducted from their wages, financial losses, and economic harm.

92.    Pursuant to O.C.G.A. § 10-1-373, Plaintiffs and the Class seek injunctive relief to prevent Defendants from continuing to misrepresent the legality of the nicotine premium and failing to provide full disclosure regarding the surcharge's effect on employee contributions. Plaintiffs also seek restitution and attorneys' fees under O.C.G.A. § 10-1-373(b).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants on all claims and requests that the Court awards the following relief:

A. An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as Class representatives for the Class and appointing the undersigned to act as Class Counsel;

B. A declaratory judgment that the unlawful and discriminatory nicotine premiums imposed on participants violate ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C. An Order instructing Defendants to reimburse all persons who paid the unlawful and discriminatory surcharges and higher premiums for insurance coverage;

D. A declaratory judgment that Defendants breached their fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, administering a wellness program that violated ERISA's anti-discrimination provisions and for failing to adequately monitor the actions of the Plan's named fiduciaries as well as the terms of the wellness program to ensure compliance with ERISA and the applicable regulations;

E. An Order requiring Defendants to provide an accounting of all prior payments of the surcharges under the Plan;

F. Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA with respect to the Plan and ordering Defendants to remit all previously collected surcharges;

G. Disgorgement of any benefits or profits Defendants received or enjoyed due to the violations of ERISA § 702, 29 U.S.C. § 1182(b);

H. Restitution of all amounts Defendants charged for the surcharges;

I. Surcharge from Defendants totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendants as a result of their collection of the unlawful and discriminatory nicotine premiums;

J. Relief to the Plan from Defendants for their violations of ERISA § 404, 29 U.S.C. § 1104, under 29 U.S.C. § 1109, including a declaration that the

nicotine premium was unlawful; restoration of losses to the Plan and its participants caused by Defendants' fiduciary violations; disgorgement of any benefits and profits Defendants received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an Order requiring Defendants to stop imposing the unlawful and discriminatory surcharges on participants in the future;

K. An award of pre-judgment interest on any amounts awarded to Plaintiffs and the Class pursuant to law;

L. An award of Plaintiffs' attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

M. Any other relief the Court determines is just and proper.

Dated: April 15, 2025                    Respectfully submitted,


                                         By: /s/ *James M. Evangelista*
                                         ────────────────────────────
                                         James M. Evangelista, Esq.
                                         (GA Bar 707807)
                                         **EVANGELISTA WORLEY, LLC**
                                         10 Glenlake Parkway
                                         South Tower Suite 130
                                         Atlanta, GA 30328
                                         jim@ewlawllc.com


                                         Oren Faircloth (*pro hac vice* forthcoming)
                                         Kimberly Dodson (*pro hac vice* forthcoming)
                                         **SIRI & GLIMSTAD LLP**
                                         745 Fifth Avenue, Suite 500
                                         New York, New York 10151
                                         Tel: (929) 677-5181
                                         E: ofaircloth@sirillp.com
                                         E: kdodson@sirillp.com

                                         *Attorneys for Plaintiffs and the*
                                         *Proposed Class*

# EXHIBIT A

 **Outlook**

---

## Re: [EXTERNAL] Inspire Brands - Claims Process

**From** Peterson, Jen <jpeterson@inspirebrands.com>
**Date** Fri 2/21/2025 3:15 PM
**To** Oren Faircloth <ofaircloth@sirillp.com>
**Cc** Scott Haskins <shaskins@sirillp.com>; Cassie Jernigan <CJernigan@sirillp.com>

Typically claims are submitted directly by the healthcare provider to the insurance company, and manual claim forms such as those provided are used for out of network charges or other one offs. The plan administrator does not manage claims.

**Thank you!**
**Jen Peterson**
**Manager, Benefits Administration**
Phone: 470-406-5255
Email: jpeterson@inspirebrands.com



InspireBrands.com
Three Glenlake Parkway NE
Atlanta, GA 30328

---

**From:** Oren Faircloth <ofaircloth@sirillp.com>
**Sent:** Friday, February 21, 2025 3:12 PM
**To:** Peterson, Jen <jpeterson@inspirebrands.com>
**Cc:** Scott Haskins <shaskins@sirillp.com>; Cassie Jernigan <CJernigan@sirillp.com>
**Subject:** RE: [EXTERNAL] Inspire Brands - Claims Process

Thanks Jen.
Just to confirm, there's no other method under the Plan of submitting a claim to the Plan's Administrator. All claims are sent to the insurance providers for review?

---

**From:** Peterson, Jen <jpeterson@inspirebrands.com>
**Sent:** Friday, February 21, 2025 2:41 PM
**To:** Oren Faircloth <ofaircloth@sirillp.com>
**Cc:** Scott Haskins <shaskins@sirillp.com>; Cassie Jernigan <CJernigan@sirillp.com>
**Subject:** Re: [EXTERNAL] Inspire Brands - Claims Process

Good afternoon,

Please find attached medical, dental and pharmacy claim forms for the 2024 plan year. Below are the mailing addresses for claims submission, this information is also available on the claim forms themselves.

Please let me know if you need any additional information.

Anthem Blue Cross and Blue Shield
P.O. Box 105187
Atlanta, GA 30348-5187

MetLife Dental Claims
P.O. Box 981282
El Paso, TX 79998-1282

OptumRx
PO Box 29044
Hot Springs, AR 71903

**Thank you!**
**Jen Peterson**
**Manager, Benefits Administration**
Phone: 470-406-5255
Email: jpeterson@inspirebrands.com



InspireBrands.com
Three Glenlake Parkway NE
Atlanta, GA 30328

---

**From:** Oren Faircloth <ofaircloth@sirillp.com>
**Sent:** Friday, February 21, 2025 1:51 PM
**To:** Peterson, Jen <jpeterson@inspirebrands.com>
**Cc:** Scott Haskins <shaskins@sirillp.com>; Cassie Jernigan <CJernigan@sirillp.com>
**Subject:** RE: [EXTERNAL] Inspire Brands - Claims Process

Thank you. I appreciate the explanation.
Yes, please send along the medical claim forms and let us know where we should send our claims.
Oren

---

**From:** Peterson, Jen <jpeterson@inspirebrands.com>
**Sent:** Thursday, February 20, 2025 2:46 PM
**To:** Oren Faircloth <ofaircloth@sirillp.com>
**Cc:** Scott Haskins <shaskins@sirillp.com>; Cassie Jernigan <CJernigan@sirillp.com>
**Subject:** Re: [EXTERNAL] Inspire Brands - Claims Process

Good afternoon,

There is no claim form in relation to the Nicotine Premium. This is an additional surcharge applied to all plans that may be removed by taking a screening and providing negative results. Instructions for removing this surcharge along with a screening form to be provided at the lab are sent to team members upon enrollment in a medical plan to the personal email address on file. Please see the screenshot below from the 2024 Benefit Guide (premiously provided) which details the Nicotine Premium. There is also a note at the bottom of page 10, Medical Plan Benefit Options, which states *"Nicotine Premium is automatically added to all Anthem medical plans. Employees who are non-nicotine users may be eligible to remove the Nicotine Premium with a completed nicotine test showing negative results. See page 11 for more details."*

For Ms. Romerro-Soto, these emails were sent on 03/15/2024 to the address sivooned.romero@yahoo.com . I have attached below a screenshot of the screening order with Quest Diagnostics and the screening form that was emailed to Ms. Romerro-Soto.

Please let me know if you have any additional questions regarding the Nicotine Premium, or if you still require medical claim forms. Thank you.

## NICOTINE PREMIUM

If you have enrolled in an Inspire Brands medical plan through Anthem BlueCross BlueShield, you will incur a Nicotine Premium. If you do not use nicotine products, you can have this Nicotine Premium removed.

The following products are considered to be Nicotine: cigarettes, cigars, pipe Nicotine, e-cigarettes, chewing tobacco, and other tobacco products.

### HOW TO DISCONTINUE THE NICOTINE PREMIUM

The nicotine screening is a one-time process. Once you have completed the screening and Quest Diagnostics has validated you are not a nicotine user, the results are valid for as long as you are enrolled in an Inspire Brands Anthem BlueCross BlueShield medical plan.

The nicotine screening process is only for employees enrolled in the medical plan. Dependents enrolled in the medical plan do not need to be screened.

If you have an email address on file with Inspire Brands, you will receive an email from Quest Diagnostics containing your Nicotine Screen Confirmation Form. Locate a Quest Diagnostics facility near you, print off the form or bring the form on your smart device to the screening location and complete the nicotine screening. Once complete, the results of your screening will be communicated directly to the Inspire Brands Benefits Department.

If Inspire Brands does not have an email address on file for you, a paper Nicotine Screening Form will be mailed to your home address.

The nicotine screening can be taken at any time throughout the year. The form will expire after 6 months. Please send an email to benefits@inspirebrands.com to request a new form. Nicotine Premiums deducted through payroll prior to completing the nicotine screening will not be refunded. Once nicotine screening results have been verified and received by the Inspire Brands Benefits Department, the Nicotine Premium will be removed as quickly as administratively possible.

If you are a nicotine user, upon successful completion of a 6-week smoking cessation program, you may be eligible to have the Nicotine Premium removed. Learn more at LiveHealthOnline.com.

Quest Diagnostics has testing facilities throughout the United States. To find a testing site near you, go to www.questdiagnostics.com.







**QPassport ID:** Q11080257

| Organization | Donor Details | Medical Review Officer |
|---|---|---|
| WORKSITE PRODUCTS | **Donor Name:** SIVOONED ROMERO SOTO | NEIL J. DASH, M.D. |
| 7000 PEACHTRE-DUNWOODY RD | **Donor ID:** ******5575 | 546 FRANKLIN AVE |
| ATLANTA, GA 30328 | **Test Reason:** OTHER - other | MASSAPEQUA, NY, 11758 |
| **Phone:** -- | **Ordered Date:** 03/18/2024 9:00 AM ET | **Phone:** 800-526-9341 |
| | **Ordered By:** Derik Garcia-Sanchez 678-514-5319 | **Fax:** 800-547-2966 |

| | |
|---|---|
| **Account/Employer:** | WSP/INSPIRE BRANDS - 10807870 |
| | 1155 PERIMETER CTR W#1200 |
| | MEREDITH CANAWAY |
| | ATLANTA, GA 30338 - |
| | Phone: 678-514-4559 |
| **Collection Service(s):** | Single |
| **Test Type(s):** | 39290N - COTININE (U) 200/200 (Urine) |
| **Donor Instructions:** | Please bring this confirmation and your driver's license or other government issued photo ID to the collection site for identification. |
| **Collection Site Instructions:** | |

**Collection Site:**
To find a collection site location and to make an appointment, visit
www.questdiagnostics.com/ur

For questions on what to expect at your drug test, visit our website at
www.EmployerSolutions.com/mydrugtest

**Thank you!**
**Jen Peterson**
**Manager, Benefits Administration**
Phone: 470-406-5255
Email: jpeterson@inspirebrands.com



InspireBrands.com
Three Glenlake Parkway NE
Atlanta, GA 30328

---

**From:** Oren Faircloth <ofaircloth@sirillp.com>
**Sent:** Thursday, February 20, 2025 12:20 PM
**To:** Peterson, Jen <jpeterson@inspirebrands.com>
**Cc:** HRSC Workday Help <HRSCWorkdayHelp@inspirebrands.com>; Scott Haskins <shaskins@sirillp.com>; Cassie Jernigan <CJernigan@sirillp.com>
**Subject:** [EXTERNAL] Inspire Brands - Claims Process

This is an EXTERNAL EMAIL. Stop and think before clicking a link or opening attachments.

Good afternoon Ms. Peterson,

I am writing on behalf of my clients, Sivooned Romero-Soto, Lashann Simpson, and Tommy Gurrola ("Clients"), to formally request the appropriate claim forms necessary for them to submit claims for benefits under the Inspire Brands, Inc. Health & Welfare Plan ("Plan"). Additionally, we seek clarification regarding the procedures for filing claims and appealing any potential adverse determinations, consistent with the terms of the Plan and its governing documents.

Based on documents provided regarding the submission of claims, claimants must submit claims directly if the provider does not submit the claim on their behalf. The claims we intend to submit on behalf of our Clients concern the Plan's imposition of a nicotine premium in connection with medical coverage under the Plan. This is not a claim for benefits in connection with healthcare services rendered. Nevertheless, Plan documents indicate that participants must submit claims prior to filing a suit in court. As such, we request that you promptly provide:

- The appropriate reports or claims forms that must be submitted to initiate the Plan's claims process;
- Clear instructions on where and how to submit those claims forms, including the address and whether electronic filing is available; and
- Information on whether claimants can request an expedited review.

Given the importance of timely exhaustion of administrative remedies, we request that the requested claim forms and procedural information be provided **within 7 business days** of this email. If any additional information is required to process this request, please let us know promptly.

We appreciate your prompt attention to this matter and look forward to your response.

At this time, our Clients reserve all rights and remedies.

Thank you for your attention to this matter.

Sincerely,

Oren Faircloth
Attorney
Siri | Glimstad
745 Fifth Avenue, Suite 500
New York, NY 10151
Main: (929) 677-5181
Facsimile: 646-417-5967
www.sirillp.com

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.